PEOPLE v ANDERSON

1. CRIMINAL LAW—APPEAL AND ERROR—SUBSTANTIAL ERROR—NEW TRIAL.

An appellate court will not guess, surmise, or speculate as to whether or not a jury did in fact give consideration to substantial erroneous testimony which that jury may reasonably have considered in coming to a determination in finding a defendant guilty of a criminal act, but will require that a new trial be held.

2. CRIMINAL LAW—EVIDENCE—FALSE EVIDENCE—JURY—PREJUDICE.

The admission of false evidence in a criminal trial before a jury is prejudicial to the defendant and is subject to reversal and remand for a new trial.

3. CRIMINAL LAW—EVIDENCE—FALSE EVIDENCE—GOOD FAITH—NEW TRIAL.

It is error to allow into evidence, during the case in chief of the prosecution, statements that are absolutely false and that are relied upon by the prosecutor in final argument to discredit the defendant's statements made to police when he was arrested, even though the false statements were obtained innocently and given in good faith.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 November 9, 1972, at Grand Rapids. (Docket No. 12009.) Decided December 7, 1972.

Robert M. Anderson was convicted of larceny in a building. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,*

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 973.
[2, 3] 4 Am Jur 2d, Appeal and Error §§ 517, 797, 801, 973.

Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Robert P. Cooper,* for defendant on appeal.

Before: R. B. BURNS, P. J., and HOLBROOK and DANHOF, JJ.

PER CURIAM. Robert M. Anderson, defendant, appeals his jury conviction of larceny in a building. MCLA 750.360; MSA 28.592.

The pertinent facts for the purpose of this appeal include the following: On the evening of December 24, 1969, the defendant, in the company of his friends Lester Mayfield and Mary Walker, went to the home of Mr. and Mrs. Willie Berry at 57 Canton Street, S.W., in the City of Grand Rapids, Michigan. At the house were the owners, Mrs. Willie Rose Berry and Mr. Willie B. Berry, and also Mr. Eldridge Davis, L. T. Pierson, and seven-year-old George Fitzpatrick. Defendant along with the other people watched some television; some of the people played cards, and all generally conversed between one another. During this period of time, Mrs. Berry was in the kitchen fixing some food, apparently for the following day. The floor plan of the Berry home included a living room, a dining room, a kitchen, a bedroom, and a bathroom.

During the evening, several of the persons at the Berry home entered both the bedroom and the bathroom. Mrs. Berry stated that she had placed her purse on the bed in the bedroom earlier that evening and that it contained $71; although she earlier testified that her purse contained $79. Mrs. Berry testified that sometime during the evening she and Mary Frances Walker went into the bedroom and opened Mrs. Berry's purse to obtain

some lipstick; and that immediately thereafter, Mrs. Berry walked back into the kitchen leaving Mary Frances Walker in the bedroom with her purse. Also, Mrs. Berry stated that while standing in the living room she requested the young boy, George Fitzpatrick, to go into the bedroom and obtain her purse for her. When the purse was brought to her, she opened it and found that the money was gone.

Mrs. Berry then asked the people in the living room which one of them had taken her money. There was no response regarding the whereabouts of the money, and thereafter Mrs. Berry called the Grand Rapids police.

Within ten minutes, the Grand Rapids police arrived at the Berry home and generally asked the people at the Berry home, including the defendant, the whereabouts of the money belonging to Mrs. Berry. Defendant Anderson volunteered to take off his shoes, when requested. In the process of removing his shoes, a police officer, Officer David Benison, saw a bulge in the sock of the defendant and withdrew from the sock a roll of money. Officer Benison testified that he immediately counted the money, finding 3 twenties, 1 ten, and 1 one-dollar bill.

The police officers then took Mr. Anderson out of the house to the police cruiser parked in front of the residence of Mr. and Mrs. Willie Berry. The police officers then proceeded to the Grand Rapids police station with the defendant. On the way to the police station, the defendant related to the police that the money that they had taken from his sock was his own and was money that he had withdrawn from the Old Kent Bank branch at Franklin Street and Eastern Avenue in the City of Grand Rapids the day before. This statement by

the defendant was raised in the direct examination of Officer Benison on at least three occasions. Questioning by the prosecutor, Mr. Zerial:

"*Q.* Did you have any conversation with the defendant at that time or any time that evening?

"*A.* We went to Division and Canton. The reason we stayed in front for a few minutes, he related the information that he had received the money, withdrawn it from a bank. And he had taken out $75 that day or the day—"

Questioning by both attorneys:

"*Mr. Zerial:* That is the defendant.

"*Mr. Cooper:* You are speaking of what Mr. Anderson said?

"*A.* Mr. Anderson said he had received the money that I took from the pants from the bank at Franklin and Eastern.

"*Q. (By Mr. Zerial):* Excuse me for interrupting, he got it from the bank?"

Questioning by Mr. Zerial:

"*Q.* Now, going back I think because I interrupted you, I'm sorry, would you tell us again about the conversation the defendant told you as to the amount of money, et cetera, in this and so forth?

"*A.* He stated that he obtained about $75 from the bank at Franklin and Eastern, the Old Kent Bank. And at this time, I don't recall if it was early in the day or day before that he obtained this money and he said he also won about $30 playing poker.

\* \* \*

"*Q.* Is there any reason, do you know why he was telling you about money that he may or may not have drawn out from a bank?

"*A.* This was his explanation for the $71 that he had in his pants, his stocking."

During the trial of this case, the prosecutor called as a witness Mr. George Rogers, the Assistant Manager of the Old Kent Bank branch at Franklin and Eastern. Mr. Rogers was called with regard to the claimed withdrawal of said money. During the examination of Mr. Rogers, he stated that he could find no records belonging to the defendant, no active savings, active checking, closed checking, or closed savings account belonging to the defendant, Robert M. Anderson.

During the final argument in this case, the prosecutor, Mr. Zerial, made direct reference to the fact that the defendant had claimed that he had withdrawn $75 from the Old Kent Bank branch the day before and concluded his comments with regard to this matter by saying:

"The defendant then tells the officers on his way downtown to headquarters that really the $71 he can explain why the $71 were on his person. And the reason for this is that he has withdrawn $75 from the branch bank of the Old Kent Bank at Franklin and Eastern. That's what he told the officers and Officer Benison testified to this.

"We brought in Mr. Rogers from the bank to indicate that there was absolutely no account under the name of Robert M. Anderson and that the only Robert Anderson, that he had any records of under the three categories, savings and checking and the other one I can't recall, but the only one was a Robert J. Anderson and that thing had been closed out or done away with back in the early '50's. So when the defendant ventured forth with this explanation of how he got the $71 he just made a wrong choice of defenses or if you will, an alibi of defense there that I got this money from the bank because when we checked the story, it just doesn't add up."

After the conviction of the defendant and his residence at a state correctional institution in

Jackson, Michigan, defendant's attorney did, in fact, receive a savings-account book registered in the name of Robert M. Anderson with the Old Kent Bank and Trust Company; and thereafter on October 1, 1971, filed with the Kent County Circuit Court, a memorandum quoting from the transcript, and attached to the memorandum a photocopy of the savings account book, Account No. 01-09412-7, a copy of the savings-account certificate, and an affidavit from the Old Kent Bank and Trust Company, signed by William H. Young, stating clearly that on December 23, 1969, the defendant, Robert M. Anderson, did in fact withdraw from the Franklin-Eastern Branch of the Old Kent Bank and Trust Company a sum in the amount of $75. The defendant filed a motion for a new trial based upon the memorandum and affidavit filed with the court. The motion was denied on the basis that the record produced sufficient evidence, without the prior objected-to evidence, to sustain defendant's conviction. It is not disputed herein that the defendant actually did have a bank account in the Old Kent Bank and withdrew from the branch at Franklin and Eastern $75 the day before the incident, as he stated to the officers who testified.

The defendant raises one issue: Is it prejudicial error to allow into evidence, during the case in chief of the prosecuting attorney, statements that are absolutely false and that are relied upon by the prosecutor in final argument?

This question is raised in issue because of testimony during the case in chief of the prosecutor that resulted in false evidence before the jury upon which the prosecutor relied in his closing argument and upon which the jury may have relied in determining the guilt of the defendant.

Where the assistant branch manager obtained his false information is immaterial; perhaps he reviewed only the accounts that had been started at his branch, even though accounts started at other branches of the Old Kent Bank and Trust Company could have been reviewed by him, and the persons owning such other accounts could well have, and in fact did, withdraw money from his branch, this being the case of the defendant, whose savings account was opened at a different branch, but who withdrew the money on the day prior to the incident from the branch at Franklin and Eastern where the witness, Mr. Rogers, was employed as assistant manager.

The question then arises as to whether or not under 1927 PA 175, § 26 (MCLA 769.26; MSA 28.1096) this evidence submitted to the jury constitutes error resulting in a miscarriage of justice.

1927 PA 175, § 26 (MCLA 769.26; MSA 28.1096) states as follows:

"No judgment or verdict,shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

The courts of the State of Michigan, of other states, and of the Federal judicial system have long held that where there is substantial error which the jury may reasonably have considered in coming to a determination in finding a defendant guilty of a criminal act, the reviewing court will not guess, surmise, or speculate as to whether or not the jury did in fact give consideration to such

erroneous testimony but will require that a new trial be held.

The question before the reviewing court, and before this Court of Appeals, is whether there is reversible error in the proceedings and not whether defendant otherwise should have been convicted. *People v Oates,* 369 Mich 214 (1963).

The United States Supreme Court has held in numerous cases that the admission of false evidence in a criminal trial before a jury is prejudicial to the defendant and is subject to reversal and remand for new trial. See *Napue v Illinois,* 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959); *Pyle v Kansas,* 317 US 213; 63 S Ct 177; 87 L Ed 214 (1942); and *Mooney v Holohan,* 294 US 103; 55 S Ct 340; 79 L Ed 791 (1935).

In the instant case, there is no question that the statements by Mr. Rogers relating to the nonexistence of defendant's, Robert Anderson's, savings account were untrue. Upon this evidence, the prosecutor strongly argued that the defendant was not telling the truth to the police officers, resulting in the obvious inference that the money found on the defendant must necessarily have therefore come from the purse of Willie Rose Berry.

We are constrained to rule that even though the testimony of Mr. Rogers may have been obtained by the prosecutor innocently, and given by Mr. Rogers in good faith, it was not true, and in fact was used improperly to discredit defendant and obtain his conviction.

We reverse and remand for a new trial.