PEOPLE v CANTER

Docket No. 114315. Submitted October 6, 1992, at Grand Rapids. Decided December 21, 1992, at 9:55 A.M.

Mark W. Canter was convicted by a jury in the Otsego Circuit Court, Alton T. Davis, Jr., J., of second-degree murder. The defendant appealed. On the defendant's motion, the Court of Appeals remanded the matter to the trial court to allow the defendant to move for a new trial on the basis that the recanting of the trial testimony of one of the prosecution's witnesses constituted newly discovered evidence. Following an evidentiary hearing limited to that issue, the trial court denied the defendant's motion.

The Court of Appeals *held:*

1. The record fails to show that the prosecution was aware at trial that the recanting witness' testimony was untrue. Indeed, the witness explicitly denied at the evidentiary hearing that she informed the prosecution or the police that she intended to lie at trial.

2. The trial court did not abuse its discretion by denying the defendant's motion for a new trial. The record neither clearly established the veracity of the recanting testimony nor the falsity of the trial testimony. The trial court, which had a superior ability to appraise the credibility of the witness, questioned the veracity of the recanting testimony. Given the trial court's superior ability to evaluate credibility and the fact that the trial testimony was corroborated by other testimony and physical evidence, the trial court's findings and conclusion will not be disturbed.

3. No error resulted from the trial court's refusal to admit at the evidentiary hearing a recorded statement made by the recanting witness to an investigator for the Attorney General's office, in view of the fact that both the witness and the investigator testified at the hearing.

4. The trial court did not err in permitting late endorsement

REFERENCES

Am Jur 2d, Criminal Law §§ 825-830, 294; Witnesses §§ 59-66.

Standard for granting or denying new trial in state criminal case on basis of recanted testimony—modern cases. 77 ALR4th 1031.

at trial of the witness who later recanted her testimony. Her identity did not become known until the examination of another prosecution witness at trial, and defense counsel was afforded adequate preparation for the cross-examination of the witness. Because no objection was made to the admission of her trial testimony on the basis of violation of the trial court's order that all interviews with the witness be conducted in the presence of defense counsel, the question of the admission of her testimony was not preserved for appellate review.

5. The trial court did not abuse its discretion by limiting cross-examination of a prosecution witness with regard to collateral matters.

6. The failure initially to test the decedent's blood for the presence of drugs or to preserve a urine specimen does not warrant reversal in the absence of any allegation or proof of bad faith on the part of the police.

7. Although the trial court properly refused to hear the testimony of witnesses at the evidentiary hearing with respect to the allegations of prosecutorial misconduct involving solicitation of false testimony, because the order of remand of the Court of Appeals specifically limited the remand to the question of the recanting witness, the defendant should be afforded an opportunity to establish his allegations of prosecutorial misconduct. Accordingly, the matter must be remanded and the trial court ordered to determine whether the prosecution withheld information from the defendant or intimidated witnesses and, if so, whether such nondisclosure or intimidation violated the defendant's due process rights.

Affirmed in part and remanded.

1. NEW TRIAL — WITNESSES — RECANTING WITNESS — APPEAL — ABUSE OF DISCRETION.

The question whether to grant a new trial on the basis of recanting testimony is addressed to the discretion of the trial court; a trial court's decision not to grant a new trial will be reversed on appeal only on a showing of clear abuse of discretion, with due regard being given to the trial court's superior opportunity to appraise the credibility of the recanting witness and other trial witnesses.

2. CRIMINAL LAW — WITNESSES — ENDORSEMENT OF WITNESSES — ABUSE OF DISCRETION.

A trial court does not abuse its discretion by permitting late endorsement of a witness by the prosecution where the identity and existence of the witness is not learned until the middle of

trial and the defendant is given adequate time to investigate the witness in preparation for cross-examination.

3. CRIMINAL LAW — WITNESSES — DUE PROCESS — VOIR DIRE.

A criminal defendant's right to due process is not violated by being required by a trial court to identify potential defense witnesses during voir dire of the jury for the purpose of determining whether any potential conflicts exist between the witnesses and the jurors.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Dennis F. Murphy,* Prosecuting Attorney, and *Kevin L. Hesselink,* Assistant Prosecuting Attorney, for the people.

*Ray J. MacNeil,* for the defendant on appeal.

Before: GRIFFIN, P.J., and NEFF and CORRIGAN, JJ.

PER CURIAM. Defendant was charged with first-degree murder, MCL 750.316; MSA 28.548, and conspiracy to commit first-degree murder, MCL 750.157a; MSA 28.354(1). Also charged were Laurie Moore, Walter Moore, Doug Brinkman, and Donald Heistand, each of whom was prosecuted separately.[1] Following a two-month jury trial in late 1988, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, and found not guilty of conspiracy. He was sentenced to life imprisonment and appeals as of right. We affirm in part and remand for further proceedings.

Defendant was charged in connection with the alleged beating death of Jerry Tobias, whose fro-

---

[1] Laurie Moore was convicted by a jury of voluntary manslaughter, MCL 750.321; MSA 28.553. Her conviction was reversed by this Court because of instructional error. See *People v Moore,* 189 Mich App 315; 472 NW2d 1 (1991). Walter Moore was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549. His appeal is pending in this Court. Donald Heistand pleaded nolo contendere and Doug Brinkman pleaded guilty to charges of being accessories after the fact to murder, MCL 750.505; MSA 28.773.

zen body was discovered on December 8, 1986, in
the bed of his pickup truck parked near the Gay-
lord fire hall. Meat products from Walt's Butcher
shop in Gaylord were also discovered in the truck.
The subsequent murder investigation involved in-
terviews of more than two hundred witnesses.

At trial, the state's pathologist, Dr. Patricia
Newhouse, testified that several portions of Tobias'
head were swollen and fluctuant and that circular
wounds were found on several areas of his body.
The circular wounds could have been caused by a
barbecue spindle seized during a search of Walt's
Butcher Shop in Gaylord. Newhouse concluded
that Tobias died from blunt force trauma to the
head. She admitted that she had not originally
tested Tobias' blood for the presence of drugs,
despite the fact that there were needle marks on
Tobias' arms. Subsequent testing revealed the
presence of cocaine in Tobias' system. Neverthe-
less, that finding did not change Newhouse's opin-
ion regarding the cause of death.

Key prosecution witness Debra Parmentier testi-
fied that she had been with defendant on the
afternoon of December 5, 1986, during which time
he picked up a package of cocaine and arranged to
meet with Laurie Moore. Parmentier claimed that
she, Walter Moore, and defendant drove to Gay-
lord later that evening. During that time, Moore
remarked that Tobias owed him $3,000 and owed
his brother Laurie $4,000 for cocaine. The three
eventually went to Walt's Butcher Shop and met
Laurie Moore, Tobias, and someone named "John,"
who was later identified as Heistand. Parmentier
testified that Laurie Moore asked Tobias for "the
stuff." When Tobias responded that he didn't have
it, an argument ensued. Walter Moore picked up a
butcher's steel and hit Tobias in the head with it,
stating, "You b . . ., I'm gonna f . . . kill you."

Defendant, Heistand, and both Laurie and Walter Moore then hit Tobias, while Laurie Moore also struck Tobias with a barbecue spindle. Tobias' body was then placed in a freezer. Defendant and the others, along with Doug Brinkman who arrived later, helped to transfer the body to the back of Tobias' truck, which was then moved near the Gaylord fire hall.

Through extensive cross-examination lasting several days, defendant vigorously attacked Ms. Parmentier's credibility. He attempted to portray her as a person inclined to fabricate bizarre stories.

On October 27, 1988, following the first day of her testimony, Parmentier first disclosed that a witness named Sherry Payton was also present at Walt's Butcher Shop when the alleged offense was committed. Trial was then delayed several days in an unsuccessful attempt to locate Payton. After the trial resumed, on November 10, Payton presented herself to the trial court. The court then ordered that all interviews of Payton be conducted in the presence of defense counsel. That evening, in defense counsel's presence, Payton denied, in a recorded statement, any personal knowledge of the events surrounding Jerry Tobias' death. The following day, in defense counsel's absence, after she was interviewed first by one, then by two Michigan State Police troopers, Payton gave a recorded statement inculpating defendant in Tobias' murder. The initial portion of the second Payton interview was not recorded.

Defendant subsequently moved to dismiss the case, or alternatively to suppress Payton's recorded statements, because the trial court's order regarding interrogation had been violated. Defense counsel acknowledged that he had consented to a one-on-one interview of Payton by a police trooper, but claimed that he did not agree to have more

than one officer present. He also objected to the failure to record the initial portion of the second interview. The trial court denied defendant's motion.

Payton then testified that Tobias picked her up from her home shortly after 2:00 A.M. on the morning of December 6, 1986, and then drove to Walt's Butcher Shop, where defendant, Parmentier, Walter Moore, and Laurie Moore were already present. Doug Brinkman walked in a few minutes later. Defendant and Tobias began arguing, and then defendant hit Tobias. When the others joined the argument, Payton left the butcher shop and walked home.

On cross-examination, Payton was questioned regarding her recent contradictory statements and also regarding a statement she made shortly after Tobias' death in which she had denied any knowledge of the events surrounding his death. Payton also admitted that she was then presently incarcerated and was facing four unrelated felony charges, which, pursuant to an agreement, were to be dismissed in exchange for her truthful testimony.

Defendant's former girl friend, Wendy Brock, testified that defendant came home between 6:00 and 7:00 A.M. on December 6, 1986. His hands were cut up and his mouth was bloody. She overheard a conversation between defendant and Doug Brinkman in January 1987 in which defendant stated, "He was dead when we put him in the truck." Additionally, in March 1987, Brock overheard Brinkman tell defendant that he was going to "get busted" for murder, to which defendant responded, "You are too."

Defendant presented a multifaceted defense. Not only did he offer an alibi, he affirmatively attacked the credibility and motives of Parmentier, Payton,

and Brock through several witnesses. For example, forensic psychiatrist Dr. Emanual Tanay examined Debra Parmentier shortly before trial. He testified that Parmentier had been hospitalized in various psychiatric institutions and suffered from an anti-social personality disorder that caused her to engage in habitual lying. Other witnesses also testified about Parmentier's reputation for "telling strange stories" and her propensity for not telling the truth.

Still another defense witness testified that Sherry Payton had recently contacted her from the county jail, stating she felt she was being forced into testifying despite her assertions that she had not been present.

The defense presented its own pathologist who criticized Dr. Newhouse's autopsy procedures. He also disagreed that death was caused by blunt force trauma to the head. Finally, defendant himself denied ever meeting Tobias, denied being present in the back of Walt's Butcher Shop, denied knowing Parmentier in December 1986, and denied having made any incriminating statements to Wendy Brock.

While his appeal was pending, defendant sought a remand on grounds that Sherry Payton had recanted her trial testimony. This Court granted defendant's motion to remand pursuant to MCR 7.211(C)(1) to permit him to file a motion for a new trial that was limited to the issue whether Sherry Payton's testimony constituted newly discovered evidence. After conducting an evidentiary hearing on terms ordered by this Court, the trial court on November 1, 1990, denied defendant's motion in a thorough opinion and order.

Defendant raises fifteen issues, which we have rearranged and consolidated. In support of several of the issues raised, defendant has improperly

submitted affidavits and other documentary evidence not presented in the trial court. Because this Court's review is limited to the lower court record, those documents will not be considered. *People v Taylor,* 383 Mich 338, 362; 175 NW2d 715 (1970); *Nationwide Mutual Ins Co v Quality Builders, Inc,* 192 Mich App 643, 648; 482 NW2d 474 (1992).

## I. NEW TRIAL MOTION

Defendant's first set of issues relate to his claim of entitlement to a new trial on the basis of Sherry Payton's recanting testimony.

### A

At the postconviction evidentiary hearing, an investigator with the Michigan Attorney General's office testified that in a recorded statement on January 10, 1990, Sherry Payton recanted her trial testimony after being offered immunity for perjury. Defendant sought to admit a transcript of the recorded statement into evidence, but the trial court sustained the prosecutor's hearsay objection and denied its admission.

Payton then testified pursuant to a grant of transactional immunity.[2] She again stated that she had perjured herself at defendant's trial. Payton, who was pregnant and facing other criminal charges at the time of defendant's trial, claimed that the police had told her that they had proof she was present at Walt's Butcher Shop on the evening of the alleged offense and also informed her that she was facing fifteen years in jail and,

---

[2] On the petition of the prosecutor, Payton was granted transactional immunity by the trial court pursuant to MCL 780.701; MSA 28.1287(101), relative to perjured testimony in either defendant's case or the case of codefendant Walter Moore.

thus, would not see her baby. Payton explained that she felt threatened by the prospect of going to jail and not seeing her baby. She decided to accept an offer whereby her pending criminal charges would be dismissed in exchange for her "truthful" testimony. Her trial testimony was based on her familiarity with the Tobias' case, gained both from talking to people and from reading newspaper articles. She stated that neither the police nor the prosecutor told her to lie, nor did they tell her what to say.

Payton claimed that, in addition to giving a false police statement and to testifying falsely at defendant's trial, she had testified falsely at a posttrial hearing in codefendant Walter Moore's case and also lied when she affirmed her trial testimony during questioning by FBI agents investigating a civil rights complaint. Additionally, Payton acknowledged that her current boyfriend and her brother were both "good friends" of defendant.

Payton's former attorney testified that Payton acted surprised when initially informed that she had been named as a witness in the Tobias case. Two other witnesses corroborated Payton's claim that she felt pressured into testifying at defendant's trial.

B

Defendant correctly argues that a prosecutor's knowing presentation of false testimony may constitute grounds for reversal, *People v McWhorter*, 150 Mich App 826, 831; 389 NW2d 499 (1986). However, his contention that the prosecutor knew that Payton intended to perjure herself at trial is not supported by the record. Indeed, Payton herself testified at the evidentiary hearing that she was told to "just tell the truth," and she explicitly

denied informing either the prosecutor or any police officer that she intended to lie at trial.

C

Next, defendant argues that a new trial is nevertheless warranted because Payton's recanting testimony constitutes newly discovered evidence establishing that she perjured herself at trial.

A motion for a new trial based on newly discovered evidence may be granted upon a showing that: (1) the evidence itself, not merely its materiality, is newly discovered, (2) the evidence is not merely cumulative, (3) the evidence is such as to render a different result probable on retrial, and (4) the defendant could not with reasonable diligence have produced it at trial. *People v Barbara,* 400 Mich 352, 362-363; 255 NW2d 171 (1977); *People v Williams,* 77 Mich App 119, 131; 258 NW2d 68 (1977).

However, where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy. *Barbara, supra; People v Smallwood,* 306 Mich 49, 55; 10 NW2d 303 (1943); *People v Van Den Dreissche,* 233 Mich 38, 46; 206 NW 339 (1925); *People v Bersine,* 48 Mich App 295, 299; 210 NW2d 501 (1973); *People v Bradford,* 10 Mich App 696, 702-703; 160 NW2d 373 (1968); *People v Miniear,* 8 Mich App 591, 609; 155 NW2d 222 (1967); *People v Dailey,* 6 Mich App 99, 102; 148 NW2d 209 (1967); 58 Am Jur 2d, New Trial, § 440, p 414.

In *Van Den Dreissche, supra* at 46, our Supreme Court, quoting from *People v Shilitano,* 218 NY 161, 170; 112 NE 733 (1916), observed:

> There is no form of proof so unreliable as recanting testimony. In the popular mind it is often

regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character.

Michigan courts have expressed reluctance to grant new trials on the basis of recanting testimony. *Williams, supra* at 132; *People v Pulley,* 66 Mich App 321, 331; 239 NW2d 366 (1976).

Whether to grant a new trial on the basis of recanting testimony is a decision committed to trial court discretion. *Williams, supra; Pulley, supra; People v Krogol,* 29 Mich App 406, 415; 185 NW2d 408 (1971); *People v Mason,* 10 Mich App 404, 408; 159 NW2d 360 (1968). To warrant reversal on appeal, a clear abuse of discretion must be shown. *Williams, supra; Pulley, supra; Dailey, supra.* In reviewing the trial court's decision, due regard must be given to the trial court's superior opportunity to appraise the credibility of the recanting witness and other trial witnesses. *People v Nunn,* 120 Mich 530, 534; 79 NW 800 (1899); *Krogol, supra* at 415; *People v Nickopoulous,* 26 Mich App 297, 299; 182 NW2d 83 (1970).

In this case, several factors convince us that the trial court did not abuse its discretion in denying defendant's motion for a new trial.

First, defendant's reliance on *People v Anderson,* 44 Mich App 222, 229; 205 NW2d 81 (1972), and cases cited therein is not warranted. Contrary to defendant's contentions, neither the veracity of Payton's recanting testimony nor the falsity of her trial testimony has clearly been established. Recanting testimony is suspect and untrustworthy. The trial court, which possessed a superior ability to appraise Payton's credibility, questioned the veracity of her recanting testimony. Although defendant argues that the credibility of Payton's recanting testimony is established because she had

given prior statements consistent with such testimony, she had also given several prior statements that are consistent with her trial testimony. For example, she testified consistently with her trial testimony at a codefendant's posttrial hearing.

Moreover, Payton waited more than a year after defendant's conviction before formally recanting, and then did so only after she was granted transactional immunity. These circumstances do not reflect favorably on the reliability of her recanting testimony. See *Pulley, supra* at 332. Nor can we dismiss the close association between defendant and both Payton's boyfriend and brother. In view of these considerations, we cannot assign credence to Payton's latest version of the truth.

Further, this is not a case where the recanting witness comprised the sole complaining witness at trial. See *People v Blair,* 44 Mich App 469, 472; 205 NW2d 183 (1973). Rather, as in *Williams, supra* at 132, and *Dailey, supra* at 102, even without Payton's trial testimony, the testimony of both Debra Parmentier and Wendy Brock was corroborated by physical evidence and expert testimony concerning the manner and cause of death. Additionally, unlike the situation in *Smallwood* (new trial granted where facts pertaining to the credibility of a recanting witness were not fully disclosed at trial), facts pertinent to Payton's credibility and possible motive for testifying falsely were "addressed in detail" before the jury, thus militating against the likelihood that her trial testimony was afforded undue significance. The record fully supports the trial court's findings regarding these matters. In light of our deference to the trial court's superior ability to evaluate credibility, we will not disturb them.

Having weighed the inherent unreliability of recanting testimony in general, the suspect nature

of Payton's recanting testimony in this case, the trial court's observation that other evidence independently supported defendant's conviction, the disclosure at trial of factual matters that would cause the jury to closely scrutinize Payton's testimony, and the trial court's superior ability to appraise the credibility of the witnesses who appeared before it, we are unable to find that the trial court abused its discretion in denying defendant's motion for a new trial.

D

Defendant also argues that the trial court erred in ruling that Payton's recorded statement to the Attorney General's investigator was inadmissible hearsay. Defendant contends that the statement did not constitute hearsay because it was not offered to prove the truth of the matter asserted, MRE 801(c), but rather to explain why the investigator from the Attorney General's office continued his investigation of the Tobias case. However, defendant does not explain the relevance of admitting the statement for such a purpose. In any event, because the investigator personally testified that he continued his investigation after Payton gave her recanting statement, and because Payton personally recanted her testimony at the evidentiary hearing, we find that any error was harmless.

## II. LATE ENDORSEMENT OF RES GESTAE WITNESS

Defendant's next two issues relate to the trial court's decision to allow Sherry Payton to testify at trial.

A

First, defendant argues that the trial court erred

in allowing the prosecutor to endorse Sherry Payton as a witness in the middle of the trial. We disagree. A prosecutor's late endorsement of a witness is permitted at any time upon leave of the court and for good cause shown. MCL 767.40a(4); MSA 28.980(1)(4). A trial court's decision to allow a late endorsement is reviewed for an abuse of discretion. *People v Heard,* 178 Mich App 692, 696; 444 NW2d 542 (1989).

Payton was not identified as a witness until the middle of the trial. This constituted good cause for the late endorsement. Before allowing the late endorsement, the trial court inquired of defendant and determined that he was adequately prepared to cross-examine Payton and had not demonstrated a need for additional investigation. The trial court further ruled that, should a need for additional investigation arise, Payton could be recalled. Under the circumstances, there was no abuse of discretion in allowing the late endorsement.

B

Defendant also argues that Sherry Payton should not have been permitted to testify because the trial court's prior order regarding interrogation had been violated. The record discloses that it was not Payton's trial testimony that defendant sought to suppress on this basis below. Rather, he moved to suppress only her pretrial statements or, alternatively, to dismiss the case in its entirety, which the trial court declined to do. An objection raised on one ground is insufficient to preserve an appellate attack based on a different ground. *People v Thompson,* 193 Mich App 58, 62; 483 NW2d 428 (1992). Moreover, defendant does not cite any authority in support of his present argument.

Therefore, we consider the issue abandoned. *People v Sowders,* 164 Mich App 36, 49; 417 NW2d 78 (1987).

### III. SCOPE OF PARMENTIER CROSS-EXAMINATION

Next, defendant argues that his Sixth Amendment right of confrontation was violated because the trial court prevented him from cross-examining Debra Parmentier regarding various matters. We disagree. The scope of cross-examination is within the discretion of the trial court. *People v Williams,* 191 Mich App 269, 273; 477 NW2d 877 (1991). Neither the Sixth Amendment's Confrontation Clause nor due process confers on a defendant an unlimited right to cross-examine on any subject. *People v Hackett,* 421 Mich 338, 347; 365 NW2d 120 (1984). Cross-examination may be denied with respect to collateral matters bearing only on general credibility, *id.* at 348, as well as on irrelevant issues. *People v Arenda,* 416 Mich 1, 8; 330 NW2d 814 (1984).

Defendant was afforded significant latitude in his cross-examination of Parmentier. He was permitted to inquire into many collateral matters to challenge her general credibility. The areas in which examination was foreclosed involve nothing more than additional collateral matters challenging Parmentier's general credibility. In precluding defendant from inquiring into such matters, the trial court neither abused its discretion nor denied defendant his Sixth Amendment right of confrontation.

### IV. TRIAL DISCLOSURE OF DEFENSE WITNESSES

Defendant also argues that his due process rights were violated because he was required to

identify his potential witnesses in open court during trial. However, neither of the cases cited by defendant is applicable because they involve only the pretrial identification of witnesses. *People v Loyer,* 169 Mich App 105, 122; 425 NW2d 714 (1988); *People v Thornton,* 80 Mich App 746, 752; 265 NW2d 35 (1978). Here, the trial court's purpose in requiring defendant to identify his potential witnesses was to determine whether any potential conflicts existed between the witnesses and the prospective jurors. Defendant has not shown that this requirement denied him a fair trial. See *People v Crowell,* 186 Mich App 505, 509; 465 NW2d 10 (1990).

### V. MISCELLANEOUS ISSUES

In his statement of the issues presented, defendant asserts that the preliminary examination should be quashed because Debra Parmentier perjured herself at the preliminary examination. However, because defendant does not argue the merits of this issue in his brief, we consider this issue abandoned. *People v Kent,* 194 Mich App 206, 210; 486 NW2d 110 (1992).

Defendant also argues that a new trial is required because Debra Parmentier perjured herself at trial, a fact established by the testimony of defense witness Roger Becker, who refuted Parmentier's earlier testimony regarding various matters. We find no merit to this argument. Whether Parmentier's testimony was credible in the face of the conflicting testimony of Becker was for the jury to decide.

Defendant also challenges the state's failure to initially test the decedent's blood for the presence of drugs and the failure to preserve a urine specimen. However, defendant does not allege bad faith

on the part of the police, nor is bad faith otherwise demonstrated by the record before us, particularly because it was the conclusion of the state's pathologist that death was caused by blunt force trauma to the head. Therefore, defendant is not entitled to relief. *Arizona v Youngblood,* 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988).

### VI. PROSECUTORIAL MISCONDUCT

Defendant's last set of issues involve allegations of prosecutorial improprieties.

### A

Following defendant's conviction, the Michigan Attorney General's office investigated the handling of the Tobias homicide case and subsequently issued a report detailing its findings. Defendant contends that the report contains information describing various alleged prosecutorial improprieties that, if proved, would entitle him to a new trial. Specifically, defendant alleges that Debra Parmentier perjured herself and that although the prosecutor knew of her perjury, he failed either to correct the false testimony or to disclose its false nature. Defendant also alleges that the prosecution failed to disclose material exculpatory information in violation of a discovery order and that several witnesses who could have provided exculpatory testimony were intimidated by the prosecution.[3]

---

[3] Briefly, the prosecution allegedly had information that Debra Parmentier had a notebook filled with newspaper articles concerning the case that she studied before trial (which is contrary to her trial testimony wherein she denied having read any articles containing facts about the case) and, also, that Parmentier had staged various shooting and abduction incidents in an effort to enhance the credibility of herself and other prosecution witnesses (again, contrary to her trial testimony). Also, the prosecution allegedly intimidated several

Defendant attempted to present witnesses to substantiate these claims at the postconviction evidentiary hearing involving the issue of Sherry Payton's recanting testimony, but the trial court precluded him from doing so because testimony concerning those matters was beyond the scope of this Court's order of remand, which specifically limited the scope of the remand to the issue whether Sherry Payton's testimony constituted newly discovered evidence.

B

Defendant now argues that the trial court erred in precluding him from presenting evidence in support of his allegations of prosecutorial improprieties. We disagree.

At the time defendant attempted to raise these issues, he had already filed a claim of appeal. Therefore, jurisdiction of his case was vested with this Court. MCR 7.208(A); *People v Williams,* 163 Mich App 744, 755; 415 NW2d 301 (1987). Although this Court had remanded the case to the trial court, it did so while retaining jurisdiction and while specifically limiting the scope of the remand proceedings. When a case is remanded by an appellate court, proceedings on remand are limited to the scope of the remand order. *People v Blue,* 178 Mich App 537, 539; 444 NW2d 226 (1989). Because the issues defendant sought to raise were outside the scope of this Court's limited order of remand, and because jurisdiction of defendant's case was otherwise vested with this Court,

witnesses, including a witness who allegedly would have testified that Parmentier was at home on the evening of the alleged murder, a witness who would have testified that Parmentier instructed another prosecution witness on what to say, and witnesses who could have verified Parmentier's efforts to enhance her credibility through the allegedly staged shooting and abduction incidents.

the trial court properly precluded defendant from raising them.[4]

C

Turning now to the legal merits of defendant's arguments, a criminal defendant has a due process right of access to certain information possessed by the prosecution. *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Carter,* 415 Mich 558, 593; 330 NW2d 314 (1982). Three different situations have been identified in which a defendant's due process rights to discovery may be implicated.

The first situation recognizes due process is offended where a prosecutor, although not having solicited false testimony from a state witness, allows it to stand uncorrected when it appears. *Giglio v United States,* 405 US 150, 153; 92 S Ct 763; 31 L Ed 2d 104 (1972); *Napue v Illinois,* 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959); *People v Wiese,* 425 Mich 448, 453; 389 NW2d 866 (1986). This rule applies even where the false testimony goes only to credibility. *Napue, supra* at 269; *Wiese, supra* at 453-454. Failure to correct false testimony requires reversal if the false testimony could in any reasonable likelihood have affected the judgment of the jury. *Giglio, supra* at 154; *Wiese, supra* at 454.

The second situation involves the suppression of material evidence favorable to an accused where a request has been made on the prosecution. *Brady, supra* at 87. In such a situation, the test for reversal is whether the suppressed evidence might

[4] After the trial court issued its opinion denying defendant's motion for a new trial, this Court issued an order denying defendant's motion to expand the scope of the remand order. Such an order does not preclude this Court from presently remanding for an evidentiary hearing, if deemed necessary. See MCR 7.216(A)(5).

have affected the outcome of the trial. *United States v Agurs,* 427 US 97, 104; 96 S Ct 2392; 49 L Ed 2d 342 (1976); *Carter, supra* at 594.

The third situation involves the suppression of material exculpatory evidence where the defendant has made only a general request for exculpatory information or no request at all.[5] *Agurs, supra* at 107; *Carter, supra* at 594. In this situation, the standard of materiality is stated in *Agurs, supra* at 112-113:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

Again, nondisclosure of evidence affecting credibility falls within these general rules. *Giglio, supra* at 154; *People v Reed,* 393 Mich 342, 354; 224 NW2d 867 (1975).

Finally, attempts by the prosecution to intimidate witnesses from testifying, if successful, also amount to a denial of a defendant's constitutional right to due process of law. *People v Pena,* 383

---

[5] The United States Supreme Court has stated that no significant difference exists between cases in which there has been merely a general request for exculpatory matter and cases in which there has been no request at all. *Agurs, supra* at 106-107.

Mich 402, 406; 175 NW2d 767 (1970); *People v Hooper,* 157 Mich App 669, 675; 403 NW2d 605 (1987). Threats from law enforcement officers may be attributed to the prosecution. *Id.; People v Stacy,* 193 Mich App 19, 25; 484 NW2d 675 (1992).

D

The absence of a testimonial record precludes us from determining whether defendant's due process rights were violated because of either prosecutorial nondisclosure of information or intimidation of witnesses. We are satisfied that justice demands that defendant should be afforded an evidentiary hearing regarding these issues. Accordingly, we remand to the trial court for this purpose. On remand, the trial court shall determine whether information known to the prosecution was withheld and whether witnesses were intimidated and, if so, whether such nondisclosure or intimidation violated defendant's due process rights. We shall retain jurisdiction.

Affirmed in part and remanded for further proceedings. The hearing on remand shall be held within ninety days of the release of this opinion. The transcript must be filed within thirty days thereafter. We retain jurisdiction.