*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ADAM RAY AARON TODD,

Defendant-Appellant.

UNPUBLISHED
May 14, 2026
10:52 AM

No. 370908
Allegan Circuit Court
LC No. 2023-025841-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

A jury convicted defendant on two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration with force or coercion). Defendant was sentenced to concurrent 5 to 15 years' imprisonment for the CSC-III convictions. We affirm.

## I. FACTUAL BACKGROUND

This case arises from defendant sexually assaulting HP at her apartment during the early morning hours of May 9, 2022. HP and defendant were friends, and HP would allow defendant and his cousin, Andrew Warren, to occasionally stay at her apartment. In the early morning hours the day of the assault, HP, defendant, and Warren were in HP's bedroom. While there, HP experienced back spasms. Defendant massaged HP's back with a massaging device while HP was lying in bed on her stomach. Defendant then started making sexual advances toward HP, before pulling down her pants and placing his fingers and penis into her vagina. HP repeatedly told defendant no and tried to stop his sexual advances. When interviewed by law enforcement, defendant acknowledged having sex with HP but asserted the sexual acts were consensual. Warren, who had been in the bedroom prior to the incident but not when it occurred, was not questioned by law enforcement because he jumped out of a window before police arrived at the apartment to avoid being arrested for an outstanding warrant. Defendant was ultimately arrested and charged with two counts of CSC-III, one count of penile-genital penetration, and one count of digital-genital penetration.

## II. PROCEDURAL HISTORY

On May 3, 2023, approximately one year after the events giving rise to the case, defendant was charged. Scheduled status conferences and other hearings took place throughout the rest of 2023. The jury trial which had been previously adjourned was scheduled for February 21, 2024. In its pretrial orders, the trial court ordered both parties to exchange exhibits to be introduced at trial at least seven days before trial or the exhibits were inadmissible without the trial court's permission.

On February 15, 2024, the prosecution served its exhibit list on defendant, along with a copy of a one-page screenshot/proposed exhibit titled "MESSAGE FROM DREW WARREN." The proposed exhibit was purported to be a message sent on Facebook Messenger[1] from Warren to HP shortly before the preliminary examination was scheduled to occur. Proposed Exhibit 8 reads as follows:

> You are a rat in the home wrecking bitch you should've never came back to Pullman and I promise you that you are f*cked in like an Adam side like you said that morning he wanted him to come over and this and that and they go and do what you did is completely f*cked up so I will have my cousins back in court in I will make sure in my power that Adam wins his case and when we do, we were exposed your brat ass to the whole f*cking town I promise you on my mama I will.

Defendant moved to exclude proposed Exhibit 8 from trial, arguing that it was untimely produced because discovery had ended months prior. The trial court excluded the exhibit from the prosecution's case-in-chief but allowed the prosecution to use it on cross-examination for impeachment purposes.

On cross-examination, Warren denied sending proposed Exhibit 8 to HP. Warren also denied messaging HP before he fell asleep after the incident. Warren admitted using Facebook Messenger to communicate with HP and conceded that proposed Exhibit 8 was sent from a Facebook account with his profile name and profile photograph associated with it. Moreover, Warren conceded that proposed Exhibit 8 referenced specific details that appeared to be sent from his point of view. However, Warren denied sending proposed Exhibit 8 to HP, claiming that his Facebook account was hacked. The prosecution then moved to admit proposed Exhibit 8, which the trial court granted. This appeal followed.

## III. DISCUSSION

## A. STANDARD OF REVIEW

Defendant argues that the trial court abused its discretion by allowing the prosecution to reference and admit Exhibit 8 at trial despite the trial court granting defendant's pretrial motion in

---

[1] The Facebook Messenger message alleged to have been sent from Warren to HP shortly before the preliminary examination is the central issue of this appeal. We refer to this message throughout this opinion as "proposed Exhibit 8" or "Exhibit 8," as it was ultimately admitted at trial.

-2-

limine, which defendant argues precluded the prosecution from admitting Exhibit 8 at trial. "The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An abuse of discretion occurs when a decision falls outside the range of reasonable and principled outcomes, and a trial court necessarily abuses its discretion when it makes an error of law." *People v Crumbley*, 346 Mich App 144, 167; 11 NW3d 576 (2023) (quotation marks and citation omitted).

Defendant also argues that this evidentiary error denied him a fair trial. This issue is unpreserved because, although defendant objected to the trial court's evidentiary ruling at trial, defendant did not claim that the trial court's evidentiary ruling denied him a fair trial, and "[a]n objection raised on one ground is insufficient to preserve an appellate attack based on a different ground." *People v Canter*, 197 Mich App 550, 563; 496 NW2d 336 (1992). "Unpreserved issues are reviewed for plain error affecting substantial rights." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant carries the burden of persuasion to establish prejudice. *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citation omitted).

## B. PRIOR INCONSISTENT STATEMENT

Defendant claims that the trial court abused its discretion by allowing the prosecution to reference and admit Exhibit 8 into evidence at trial to impeach Warren, despite the trial court excluding Exhibit 8 from trial, which infringed defendant's right to a fair trial. We disagree.

"The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law." *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022). "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial . . . ." *Id*. Admitting certain evidence against a criminal defendant may violate due process only when the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v United States*, 493 US 342, 352; 110 S Ct 668; 107 L Ed 2d 708 (1990) (quotation marks and citation omitted).

Here, defendant argues that the trial court abused its discretion by allowing the prosecution to reference and admit Exhibit 8 into evidence at trial to impeach Warren by a prior inconsistent statement, despite the trial court's pretrial ruling precluding the prosecution from admitting Exhibit 8 at trial. Despite defendant's argument and the prosecution conceding that Exhibit 8 was improperly admitted at trial as substantive evidence, the trial court did not abuse its discretion in admitting Exhibit 8 into trial for the limited purpose of impeaching Warren by a prior inconsistent statement. In granting defendant's emergency motion in limine, the trial court precluded Exhibit 8 from being admitted as an exhibit in the prosecution's case-in-chief as substantive evidence.

This was proper because a trial court has discretion to prohibit a party from introducing untimely discovered material into evidence.  MCR 6.201(J).

However, the trial court's pretrial ruling did not preclude the prosecution from admitting Exhibit 8 into evidence for the limited purpose to impeach Warren by a prior inconsistent statement.  At the motion hearing on defendant's motion in limine, the trial court specifically stated that the prosecution could use Exhibit 8 during cross-examination for impeachment purposes, like determining if Exhibit 8 was Warren's prior inconsistent statement.  So although the trial court's pretrial ruling precluded the prosecution from admitting Exhibit 8 at trial as substantive evidence, Exhibit 8 could be offered at trial for impeachment purposes.

Because the trial court's pretrial ruling allowed the prosecution to use Exhibit 8 at trial for impeachment, the relevant inquiry is whether Exhibit 8 was properly admitted into evidence to impeach Warren by a prior inconsistent statement.  MRE 613(b) governs when extrinsic evidence of a witness's prior inconsistent statement may be introduced at trial.  Specifically, MRE 613(b) states, "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."  Additionally, despite defendant's argument on appeal and the trial court's initial ruling at trial, a witness may be impeached by a prior inconsistent statement even when the witness denies making the prior inconsistent statement.  *People v Williams*, 93 Mich App 236, 243; 287 NW2d 184 (1978).  Once a witness denies making a prior inconsistent statement, a proper foundation must be established to attribute the prior inconsistent statement to the testifying witness.  Specifically, "[w]hen attempting to impeach a witness with a prior inconsistent statement made by that witness, a proper foundation must be laid by interrogating the witness as to the time and place of the statement and the person to whom it was alleged to have been made[.]" *People v White*, 139 Mich App 484, 488; 363 NW2d 702 (1984) (quotation marks and citation omitted).  "Once a foundation is properly laid and the witness either admits or denies making the statement, the witness may be impeached by proof of that statement." *Id*.

At trial, Warren denied sending HP a threatening message on Facebook Messenger before the preliminary examination was scheduled to occur.  To impeach Warren's character for truthfulness, the prosecution confronted Warren with Exhibit 8.  The exhibit indicated that Warren had messaged HP before the preliminary examination indicating that he would ensure that defendant prevailed at trial.  At trial, Warren denied sending HP Exhibit 8 and claimed that his Facebook account was hacked.  According to Warren, an unknown hacker sent HP the message.

The trial court record indicates that Warren had an opportunity to explain and deny the prior inconsistent statement, and defendant had an opportunity to question Warren about Exhibit 8.  Furthermore, the questions asked and answers given provide an adequate foundation to allow the jury to conclude that Exhibit 8 was Warren's prior inconsistent statement before it was introduced as an exhibit at trial to impeach Warren. Testimony established that Exhibit 8 was sent from a Facebook account that included Warren's profile picture and profile name.  Warren also noted that he had previously used Facebook Messenger to communicate with HP, further supporting that he sent HP Exhibit 8.  Warren conceded that Exhibit 8 appeared to be sent from his point of view and by someone with specific knowledge of the incident between HP and defendant, which bolsters attributing Exhibit 8 to Warren given that he was in the apartment on

-4-

the night of the incident. Warren also knew that defendant had an upcoming court hearing around the time that HP received Exhibit 8. This testimony demonstrates that the author of Exhibit 8 had access to Warren's Facebook profile, had specific knowledge of the allegations between HP and defendant, and was aware of defendant's criminal charges and court proceedings, which supports attributing Exhibit 8 to Warren as his prior inconsistent statement.

The requirements under MRE 613(b) were satisfied to allow extrinsic evidence of Warren's prior inconsistent statement to be admitted for impeachment purposes, and the trial court did not abuse its discretion by allowing the prosecution to reference and admit Exhibit 8 into evidence for the limited purpose of impeaching Warren's character for truthfulness because this result was consistent with the trial court's pretrial ruling.

Additionally, even if Exhibit 8 was improperly admitted into evidence as Warren's prior inconsistent statement, defendant is not entitled to a new trial. A verdict will not be reversed due to an evidentiary error unless we determine that the error resulted in a miscarriage of justice. MCL 769.26. A miscarriage of justice occurs when a defendant demonstrates that a different outcome at trial was more probable than not to have occurred without the evidentiary error. *People v Bass*, 317 Mich App 241, 255; 893 NW2d 140 (2016). In other words, defendant must establish that the jury would have believed defendant's theory over HP's testimony had Warren not been impeached by a prior inconsistent statement, which defendant has not established.

To convict defendant of CSC-III, the prosecution was required to prove beyond a reasonable doubt that defendant engaged in sexual penetration with HP by force. MCL 750.520d(1)(b). HP testified that defendant penetrated her vagina with his fingers and penis without her consent and over her attempts to stop defendant's sexual advances. This testimony supports defendant's convictions, and the trial court record does not show that the jury would have believed Warren's testimony and rendered a different outcome at trial had Exhibit 8 not been used at trial, given that Warren's credibility was undercut at trial. For example, Warren originally denied messaging HP before he went to sleep after the incident. However, the prosecution confronted Warren with Exhibit 7, to which Warren conceded that he messaged HP before he went to sleep after the incident, demonstrating his inconsistent testimony. Defendant has not established that the alleged evidentiary error more probably than not resulted in a miscarriage of justice.

Next, defendant argues that he was denied a fair trial because the prosecution referenced Warren's prior inconsistent statements during closing arguments, and by doing so, the prosecution improperly inferred that the jury could use Warren's prior inconsistent statements substantively to ascertain defendant's guilt. We disagree. During closing arguments, "a prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). Moreover, prosecutors "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). During closing arguments, the prosecution highlighted Warren's prior inconsistent statements, which were properly admitted into evidence, to discredit the truthfulness of his testimony and to support the prosecution's theory of the case. This was not error. The prosecution was permitted to reference this admitted impeachment evidence during closing arguments because it supported the prosecution's argument that Warren was not credible. Moreover, despite defendant's argument,

the prosecution never informed the jury that Warren's prior inconsistent statements could be substantively used to ascertain defendant's guilt.

Additionally, even if the jury had been informed that the statements could be substantively used to ascertain defendant's guilt, which they were not, the verdict did not result in a miscarriage of justice because the content of Warren's prior inconsistent statements did not incriminate defendant. Therefore, defendant was not denied a fair trial when the prosecution referenced Warren's prior inconsistent statements during closing arguments.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that his trial counsel rendered ineffective assistance by not requesting that the jury be immediately instructed on the proper use of Warren's prior inconsistent statements after Warren was impeached. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Tardy*, 348 Mich App 500, 509; 19 NW3d 164 (2023) (quotation marks and citation omitted). De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). "When the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record." *Lane*, 308 Mich App at 68.

"Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions."[2] *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). The right to counsel requires more than the mere presence of counsel; it requires "the effective assistance of counsel." *Id*. For this Court to order a new trial due to ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In demonstrating trial counsel's deficient performance, "the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). The presumption of competent representation "requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted; alteration in original).

---

[2] Const 1963, art 1, § 20; US Const, Am VI.

Assuming without deciding that an objectively reasonable attorney would have requested a specific limiting instruction instructing the jury on the proper use of Warren's prior inconsistent statements after he was impeached—especially in a case hinging on witness credibility—defendant's trial counsel did not render ineffective assistance because defendant was not prejudiced by his counsel's inadequate performance. The trial court record does not show that a reasonable probability exists to find that the jury would have rendered a different outcome at trial had a specific limiting instruction been provided to the jury once Exhibit 8 was admitted into evidence to impeach Warren's testimony. Contrary to defendant's argument, Warren's testimony was not vital in determining whether HP and defendant engaged in consensual sexual penetration because Warren was not present when defendant engaged in sexual penetration with HP. Additionally, the trial court record indicates that Warren's credibility was placed into question without Exhibit 8 being admitted at trial. For example, Warren never provided the police with his knowledge of the incident because he purposely left the apartment before law enforcement arrived by jumping out of the window to avoid being arrested on his outstanding warrant. Warren's apparent criminal history and failure to assist law enforcement with the investigation, despite having relevant information, surely placed his credibility into question and further negated the possibility that the jury believed Warren's testimony. Furthermore, as the prosecution correctly mentioned, Warren was impeached when the prosecution admitted Exhibit 7 into evidence, which was not part of defendant's motion in limine. After Warren originally denied messaging HP after the incident before he fell asleep, he was recalled to the stand and confronted with Exhibit 7, to which he conceded messaging HP before he fell asleep after the incident. Therefore, the trial court record does not indicate that a reasonable probability exists to find that the jury would have reached a different outcome at trial had defendant's counsel immediately requested a limiting instruction informing the jury on the proper use of Warren's prior inconsistent statements.

Defendant also argues that the trial court was required to provide a specific limiting instruction sua sponte informing the jury that Warren's prior inconsistent statements could only be considered for impeachment purposes. However, defendant failed to request such a jury instruction, and in the absence of a request, a trial court is not required to issue a limiting instruction. *People v Kelly*, 386 Mich 330, 337; 192 NW2d 494 (1971). Moreover, the trial court record does not indicate that a miscarriage of justice occurred because the trial court generally instructed the jury regarding the proper use of a witness's prior inconsistent statement. Thus, "in the absence of a specific request at that time or a showing of a miscarriage of justice, a limiting instruction in the final instructions to the jury will be deemed sufficient." *Id*. Therefore, defendant has not overcome the strong presumption of effective assistance of counsel.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick