# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I A PAUL, Minor.

UNPUBLISHED
October 27, 2015

No. 326032
Wayne Circuit Court
Family Division
LC No. 14-517077-NA

Before: METER, P.J., and WILDER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent father (respondent) appeals as of right the order terminating his parental rights to the minor child, IAP, under MCL 712A.19b(3)(b)(*i*) (the parent's act caused sexual abuse of a sibling of the minor child, and it is likely that abuse will occur in the foreseeable future) and (j) (reasonable likelihood that the child will be harmed if returned to the home of the parent). We affirm.

## I.    Termination of Respondent's Parental Rights

Respondent first argues that the trial court clearly erred in finding that statutory grounds for termination were established by clear and convincing evidence. We disagree. This Court reviews for clear error a trial court's decision that a ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks and citation omitted). "Clear error signifies a decision that strikes [this Court] as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "Due regard is given to the trial court's special opportunity to judge the credibility of witnesses." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008); see also MCR 2.613(C).

"Termination of parental rights is appropriate when the [Department of Health and Human Services (DHS)] proves one or more grounds for termination by clear and convincing evidence. It is only necessary for the DHS to establish by clear and convincing evidence the existence of one statutory ground to support the order for termination of parental rights." *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012) (citations omitted). "If a statutory ground for termination is established and the trial court finds 'that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional

-1-

efforts for reunification of the child with the parent not be made.' " *In re Ellis*, 294 Mich App 30, 32-33; 817 NW2d 111 (2011), quoting MCL 712A.19b(5).

### A. Termination of Parental Rights Under MCL 712A.19b(3)(b)(*i*)

The first ground for termination at issue here is MCL 712A.19b(3)(b)(*i*), which provides for termination when:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

In *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009), this Court upheld a termination of the respondent's parental rights over all of his children under MCL 712A.19b(3)(b)(*i*) when the evidence showed that the respondent sexually abused at least two of his daughters, SRC and HRC. This Court reasoned:

> Although [the respondent] denied sexually abusing the children, the trial court apparently believed the testimonies of SRC and HRC, both of whom asserted that [the respondent] sexually abused them. It is not for this Court to displace the trial court's credibility determination. Further, [the respondent's] treatment of SRC and HRC is probative of how he will treat their other siblings. And MCL 712A.19b(3)(b)(*i*) specifically states that it applies to a child on the basis of the parent's conduct toward the child's siblings. Thus, because grounds for termination of [the respondent's] parental rights were established under at least MCL 712A.19b(3)(b)(*i*), termination of his rights to all the children is proper. [*In re HRC*, 286 Mich App at 460-461 (citations omitted).]

In this case, the trial court terminated respondent's parental rights to IAP on the basis of respondent's sexual abuse of IAP's sibling, BB, and the likelihood that IAP will suffer abuse if returned to respondent. Respondent argues that the trial court clearly erred in finding that clear and convincing evidence supported termination of his parental rights under MCL 712A.19b(3)(b)(*i*). According to respondent, BB's testimony was inconsistent and untrustworthy. Respondent calls into doubt BB's testimony concerning the four or five incidents of abuse when BB was 9 or 10 years old and that respondent touched BB's vagina in bed. Respondent bases his claim on the assertion that BB at one point said she felt respondent's penis on her vagina and later said she did not know whether he put his penis in her vagina. However, respondent overlooks the fact that the trial court did not rely on these incidents in its termination decision. Instead, the trial court referred to two other incidents of abuse of BB for which there was independent corroboration or an admission by respondent: respondent's placement of a potato chip clip on BB's naked vagina when she was approximately 10 years old and his touching of her breast during a camping trip when she was 13 or 14 years old.

The chip clip incident was testified to by BB's older sister, BB2. BB2 testified that, while in the living room, she heard BB cry and then scream. BB2 then went into the kitchen and

saw that respondent had placed a potato chip clip on BB's naked vagina. MP, the children's mother, recalled the chip clip incident. Although she did not recall actually seeing the clip on BB's vagina, MP did remember walking into the kitchen and seeing BB upset and crying. MP and respondent then argued, and respondent said it was an accident. In his testimony, respondent admitted that the chip clip incident occurred. He claimed that it was a "bad joke" related to the fact that "[BB] peed all the time." Respondent claimed that he accidentally released the clip on BB and that it clipped her inner thigh close to her vagina.

With respect to the camping trip incident, BB testified that when she was 13 or 14 years old, she and respondent went camping by themselves and slept on the same mattress in a van. She stated that respondent touched her breasts while her eyes were closed and that she told MP about this incident a few weeks later. Respondent testified that he took BB's word that this incident occurred. However, he claimed he could not recall the incident and speculated that he must have thought that BB was MP, even though MP was not on the camping trip.

Respondent claims that BB was inconsistent regarding how old she was at the time of the camping trip in which respondent touched her breast. BB testified at trial that she was 13 or 14 years old at the time of the camping trip. On cross-examination, DHS worker Aerial Ali indicated that the petition stated that the camping incident occurred when BB was 9 or 10 years old. However, the petition, which references all of the alleged incidents, including the touching of the breasts and the vagina, says that BB "reported that these incidents occurred when she was between the ages of 9 and 10 as well as the age of 14."

It is reasonable to conclude that the petition is consistent with BB's testimony regarding her age at the time of the camping trip. Moreover, as discussed, this Court pays due regard to the trial court's opportunity to assess the credibility of witnesses. *In re LE*, 278 Mich App at 18. Furthermore, respondent's argument that BB made inconsistent or unreliable statements regarding his alleged touching of her vagina in bed ignores the fact that the trial court relied on two other incidents of abuse that were corroborated by other witnesses or admitted to by respondent. Therefore, the trial court did not clearly err in finding that respondent sexually abused IAP's sibling, BB.

Further, the trial court did not clearly err in finding a reasonable likelihood that IAP will suffer from sexual abuse in the foreseeable future if returned to respondent. As discussed, respondent's sexual abuse of BB is probative of how respondent will treat IAP. *In re HRC*, 286 Mich App at 460-461.

Indeed, there was evidence that respondent was "grooming" IAP for sexual abuse. IAP disclosed during a forensic interview that respondent had touched her vaginal area and buttocks with his hand and toilet paper and that "[i]t felt weird." She stated that respondent threatened to "whoop" IAP's sisters with a belt if they disclosed that he had touched IAP.[1] IAP also disclosed

---

[1] The trial court found that parts of IAP's statement were unclear, including her assertion regarding the toilet paper being used, and that this assertion alone would not comprise clear and convincing evidence to satisfy a statutory ground for termination. We discuss this portion of

that she and respondent played "a dirty game" called "toilet" in which he sat on her face while clothed. In addition, respondent and IAP wrestled on respondent and MP's bed. IAP stated that she and respondent sometimes showered together and that respondent did not wear anything when he was in the shower with her. Respondent acknowledged that he and IAP showered naked together until IAP was approximately four years old. MP testified that once IAP reached four or five years of age, MP told respondent to wear boxers in the shower because it did not look appropriate for him to be naked. After that, respondent sometimes wore boxers in the shower with IAP. However, sometimes he still showered naked with IAP, even though MP had told him to wear boxers.

While supervising a visit between respondent and IAP, Ali observed IAP act like a puppy and lick respondent's face, while sitting on respondent's lap. While supervising another such visit, Dr. Vida Fiorenino, a therapist who testified as an expert in the counseling of children who are the subject of abuse and neglect, observed unusually affectionate behavior between respondent and IAP, including extended kisses on the lips and respondent's caressing of IAP's hair throughout the entire hour-long visit. Also during this visit, IAP sniffed respondent for a long time when she asked him if he remembered playing the toilet game.

Dr. Fiorenino explained that the accumulation of multiple incidents could reflect grooming. Ali believed that respondent's actions taken together amounted to grooming behaviors designed to make IAP more comfortable and to escalate things in a sexual manner. Christine Brohl, the forensic interviewer who interviewed IAP, likewise concluded that the acts IAP described comprised a form of grooming because there was "a series of games and exposures of body parts, getting children comfortable, I believe they had also played a game on their [sic] mom's bed of wrestling. So in my mind, yes, that's a form of grooming." Brohl had concerns that IAP was being groomed for more sexual behavior. Accordingly, given respondent's sexual abuse of BB and the evidence of multiple incidents suggesting that respondent was grooming IAP for sexual abuse, the trial court did not clearly err in finding a reasonable likelihood that IAP will suffer sexual abuse in the foreseeable future if returned to respondent's care.

B. Termination of Parental Rights under MCL 712A.19b(3)(j)

This Court need not consider the additional ground on which the trial court based its termination decision because at least one ground for termination existed. *In re HRC*, 286 Mich App at 461. We will nonetheless address the additional ground raised on appeal.

The other ground for termination in this case is MCL 712A.19b(3)(j), which requires a court to find by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm includes both physical harm and emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *Id*. at 266. As discussed, there

_____

IAP's statement only in connection with several other incidents as pertinent to the broader issue of whether respondent was grooming IAP for sexual abuse.

was evidence that respondent sexually abused IAP's sibling and that respondent was grooming IAP for sexual abuse. Based upon these findings, the trial court did not clearly err in finding clear and convincing evidence that IAP would be harmed if returned to respondent.

## II. Recanted Testimony

Next, respondent contends that he is entitled to a remand to the trial court because he attached to his appellate brief an affidavit recanting statements made by BB during trial.[2] A motion for new trial on the basis of newly discovered evidence must first be brought in the trial court in order to preserve the issue for review. *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Respondent did not move for a new trial, a new termination hearing, or otherwise raise the issue of the recanting affidavit below. Therefore, because this issue is not preserved, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Also, respondent did not raise this issue in his statement of questions presented. This Court may therefore decline to review the issue. *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996). In addition, the affidavit is not part of the lower court record. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Even if the affidavit is considered, respondent has failed to establish that he is entitled to any relief.

In *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), our Supreme Court explained:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [Quotation marks omitted.]

Respondent has not established that the evidence is newly discovered. The affidavit is undated. Although the language of the affidavit suggests that it was written after BB testified at trial, the trial occurred on six dates in October and December of 2014. BB testified on October 22, 2014. Trial concluded on December 11, 2014. Therefore, even though the affidavit was apparently written after BB testified, there is no basis to conclude that the affidavit was written after the trial ended and after respondent's parental rights were terminated. Respondent has failed to establish that the evidence is newly discovered.

---

[2] We note that this affidavit is highly dubious on its face, beyond the ordinary skepticism with which we treat supposed recantations. The affidavit is undated, respondent's own attorney acted as the notary, and the notarization itself was improper due to the lack of the notary's signature or the date of notarization. See MCL 55.287.

Respondent also has not shown that the affidavit makes a different result probable at a new termination hearing. "[W]here newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). No form of proof is as unreliable as recanting testimony given its untrustworthy character. *Id.* at 559-560, citing *People v Van Den Dreissche*, 233 Mich 38, 46; 206 NW 339 (1925). "Michigan courts have expressed reluctance to grant new trials on the basis of recanting testimony." *Canter*, 197 Mich App at 560. In this case, BB's affidavit recants her testimony that there was sexual penetration or attempted sexual penetration. However, BB expressed at trial that she was uncertain whether respondent's penis penetrated her vagina. Moreover, the trial court did not rely on the incidents involving respondent's penis touching BB's vagina. Rather, the trial court relied on the placement of a chip clip on BB's vagina and the fondling of BB's breast on a camping trip to find that respondent sexually abused BB. As discussed, these incidents were corroborated by other witnesses and respondent's admissions. Therefore, the recantation concerning whether respondent's penis penetrated BB's vagina does not implicate the trial court's rationale and is not likely to lead to a different result.

The assertion in BB's affidavit that respondent lacked an illegal or wrongful sexual intent also fails to establish a probability of a different result. Newly discovered evidence must be admissible to warrant a new trial. See *People v Grissom*, 492 Mich 296, 324; 821 NW2d 50 (2012) (Marilyn Kelly, J., concurring) ("[T]o potentially effect a different result on retrial and thereby satisfy the fourth *Cress* factor, the newly discovered evidence must be admissible."). "Evidence which is not relevant is not admissible." MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. " 'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts . . . if that intentional touching *can reasonably be construed* as being for the purpose of sexual arousal or gratification [or] done for a sexual purpose . . . " MCL 750.520a(q) (emphasis added). This statutory language provides "a reasonable person standard[.]" *People v Piper*, 223 Mich App 642, 647; 567 NW2d 483 (1997). BB's subjective opinion concerning respondent's intent when he touched her is therefore irrelevant. The trial court rejected respondent's exculpatory explanations for why he put a chip clip on BB's naked vagina and touched her breast. Therefore, because the portion of BB's affidavit expressing her personal opinion about respondent's intent is inadmissible, it does not make a different result probable.

## III. Best Interest of the Child

Respondent next argues that the trial court clearly erred in finding that termination of his parental rights was in IAP's best interests. We disagree. This Court reviews the trial court's best interest determination for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40. Whether termination is in a child's best interests is determined by a preponderance of the evidence standard, rather than the clear and convincing evidence standard used to determine whether a statutory ground for termination has been met. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re*

*Olive/Metts Minors*, 297 Mich App at 40, citing MCL 712A.19b(5). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (quotation marks and citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court did not clearly err in finding that termination of respondent's parental rights was in IAP's best interests. Although numerous witnesses testified that respondent and IAP had a close and loving relationship, that bond must be weighed against the risk of harm to IAP. As discussed, there was evidence that respondent sexually abused IAP's sibling, BB. Evidence of how a parent treats one child is probative of how the parent will treat that child's sibling. *In re Hudson*, 294 Mich App at 266. There was also evidence that respondent was grooming IAP for sexual abuse. Dr. Fiorenino testified that if BB was sexually abused, a continued relationship between IAP and respondent could be harmful to IAP and that there was a danger of recidivism. Further, although IAP remained in the custody of her mother, MP, there was a risk that if respondent's rights were not terminated, respondent could obtain custody if something happened to MP that caused her to be unable to care for IAP. Accordingly, the trial court's best-interests determination was not clearly erroneous.

Affirmed.

/s/ Patrick M. Meter
/s/ Kurtis T. Wilder
/s/ Amy Ronayne Krause