# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTLY ERNEST JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
May 31, 2016

No. 311625
Wayne Circuit Court
LC No. 99-005393-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENDRICK SCOTT,

        Defendant-Appellant.

No. 317915
Wayne Circuit Court
LC No. 99-005393-FC

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

These two consolidated appeals arise from the denials of motions for relief from judgment filed by each codefendant in the same lower court file.[1] In Docket No. 311625, defendant, Justly Ernest Johnson, appeals an opinion and order that denied his fourth motion for relief from judgment. In Docket No. 317915, defendant, Kendrick Scott, appeals an opinion and order that denied his motion for relief from judgment. Following an evidentiary hearing on

---

[1] This Court consolidated the appeals and, on direction from our Supreme Court, remanded the case for an evidentiary hearing to be conducted jointly with respect to motions for relief from judgment filed by both defendants. *People v Johnson*, unpublished order of the Court of Appeals, entered December 17, 2014 (Docket No. 311625); *People v Scott*, unpublished order of the Court of Appeals, entered December 17, 2014 (Docket No. 317915).

-1-

remand regarding both defendants' motions for relief from judgment, the trial court denied relief to both defendants. For the reasons provided below, we affirm.

## I. PROCEDURAL BACKGROUND

Defendants were convicted in separate trials in 2000 of various offenses related to the May 9, 1999, homicide of Lisa Kindred (Lisa).

Following a bench trial, Johnson was convicted of first-degree felony murder, MCL 750.316(1)(b), assault with intent to rob while armed, MCL 750.89, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Johnson was sentenced to life imprisonment for the felony murder conviction, 20 to 30 years' imprisonment for the assault with intent to rob while armed conviction, and two years' imprisonment for the felony-firearm conviction. Johnson's convictions and sentences were affirmed on direct appeal. See *People v Johnson*, unpublished opinion per curiam of the Court of Appeals, issued March 26, 2002 (Docket No. 228547).

Following a jury trial, Scott was convicted of the same offenses and received the same sentence for each offense that Johnson did. On direct appeal, this Court vacated Scott's conviction for assault with intent to rob while armed as violative of double jeopardy protections and remanded for amendment of the judgment of sentence, but affirmed in all other respects. See *People v Scott*, unpublished opinion per curiam of the Court of Appeals, issued March 26, 2002 (Docket No. 228548).

Both defendants filed motions for relief from judgment[2] and sought a new trial based, in large part, on newly discovered evidence in the form of the eyewitness testimony of Lisa's son, Charmous Skinner, Jr., who was eight years old and in the vehicle at the time his mother, Lisa, was shot. The trial court denied their motions, and this Court denied leave to appeal. But our Supreme Court ordered us to remand to the circuit court for an evidentiary hearing and then to review as on leave granted the following issues:

> (1) whether trial counsel rendered constitutionally ineffective assistance by failing to call Charmous Skinner, Jr., as a witness at trial; (2) whether the defendant is entitled to a new trial on grounds of newly discovered evidence in light of the proposed evidence related to Charmous Skinner, Jr., as an eyewitness to the homicide; and (3) whether appellate counsel rendered constitutionally ineffective assistance by failing to raise these two issues on direct appeal. [*People v Scott*, 497 Mich 897, 897-898 (2014).[3]]

_____

[2] Before Johnson filed the motion for relief from judgment that is the subject of this current appeal, he filed three earlier such motions, all of which were denied and with respect to all of which appellate review was denied.

[3] The Supreme Court's order with respect to Johnson is the same except the Court also ordered us to determine that, if Johnson is not entitled to relief but Scott is, whether the denial of such

Pursuant to the Supreme Court's order, we remanded to the circuit court to conduct an evidentiary hearing to determine whether each defendant was deprived of his right to the effective assistance of counsel and whether each defendant is entitled to a new trial based on newly discovered evidence, as provided by Skinner's testimony. The trial court held its hearing and concluded that neither defendant was denied the effective assistance of counsel and that neither defendant was entitled to a new trial on the basis of newly discovered evidence. The trial court determined that Skinner, who had witnessed the murder when he was eight years old and testified 16 years later that he was sure that neither defendant was the shooter, was not credible.

## II. ANALYSIS

### A. RELIEF FROM JUDGMENT BASED ON NEWLY DISCOVERED EVIDENCE

We first address the Supreme Court's mandate of whether defendants are "entitled to a new trial on grounds of newly discovered evidence in light of the proposed evidence related to Charmous Skinner, Jr., as an eyewitness to the homicide."

At the outset, we note that defendants' claims are not procedurally barred. MCR 6.502(G)(2) provides, "A defendant may file a second or subsequent motion [for relief from judgment] based on a retroactive change in law that occurred after the first motion for relief from judgment *or a claim of new evidence that was not discovered before the first such motion.*" (Emphasis added.) Because Scott did not file any prior motions for relief from judgment, his motion does not implicate this rule. Although Johnson filed three earlier motions for relief from judgment, his current motion alleges, for the first time, a claim of newly discovered evidence based on Skinner's eyewitness testimony. Skinner's eyewitness account, including his description of the shooter, was not discovered before Johnson's third motion for relief from judgment. Although the Wisconsin Innocence Project (WIP), which represented Johnson at the time, contacted Skinner by telephone one time in 2007, and Skinner indicated that he saw what happened to Lisa, Skinner did not give the WIP a description of the shooter. Skinner first described the shooter when he spoke to investigative reporter Scott Lewis in 2011. Accordingly, Skinner's eyewitness account and description of the shooter, and his exclusion of defendants as the perpetrators after viewing a photo array, comprise new evidence that was not discovered before the earlier motions for relief from judgment. Hence, MCR 6.502(G)(2) does not bar the present motions for relief from judgment.[4]

---

relief in that circumstance violates Johnson's constitutional rights to due process. *People v Johnson*, 497 Mich 897 (2014).

[4] The prosecution cites *People v Swain*, unpublished opinion per curiam of the Court of Appeals, issued February 5, 2015 (Docket No. 314564), slip op, p 2, for the proposition that the *Cress* test for newly discovered evidence, including the requirement that the party could not, with reasonable diligence, have discovered and produced the evidence for trial, applies in determining whether evidence is "newly discovered" for the purpose of MCR 6.502(G)(2). Aside from this opinion being unpublished and, hence, not binding under the rule of stare decisis, MCR 7.215(C)(1), our Supreme Court has recently reversed this Court's decision in *Swain*, *People v Swain*, ___ Mich ___ (Docket No. 150994, order entered May 18, 2016). The plain language of

MCR 6.508(D)(3) provides that a defendant who alleges grounds for relief that could have been raised on direct appeal of his conviction or in a prior motion must demonstrate, *inter alia*, good cause for failure to raise the asserted grounds on appeal or in the prior motion. The good cause requirement may be waived if there is a significant possibility that the defendant is innocent. MCR 6.508(D)(3). The newly discovered evidence claim pertaining to Skinner's eyewitness account could not have been raised with reasonable diligence on appeal or in Johnson's prior motions. First, nothing in the police reports indicated that any of the children in the van saw the shooter. Second, Skinner's account was not actually discovered until 2011 when Skinner spoke to Lewis and then to the Michigan Innocence Clinic (MIC), which, represented Johnson. Lewis is the first person to whom Skinner gave a description of the man he saw on the night of Lisa's death. Moreover, Skinner moved to Pennsylvania shortly after the murder and did not talk to anyone about the details of what he saw that night because he was trying to forget it.

Indeed, the prosecutor concedes that Skinner was unwilling to talk about the matter; in its appellate briefs, the prosecution notes that from both his affidavit and evidentiary hearing testimony, "[Skinner indicated that] after his mother's death, he shut down and repressed [his memory of what occurred], and that his family tried to make him talk to a counselor, but he never did talk to any counselor or therapist about his mother's death. . . . If [Skinner] would not even talk to a counselor or therapist, there seems little likelihood that he would have been willing to talk to a lawyer." The prosecutor faults the WIP for failing to follow up with more questions when it spoke to Skinner in 2007, but the record does not indicate Skinner was ready yet to talk about this matter in detail.

Further, the testimony of Dr. Katherine Rosenblum, an expert in clinical and developmental psychology with a focus on children, indicated that it would be reasonable for a child not to talk about a traumatic event such as witnessing his mother's murder in the months and years that follow the event. Avoiding reminders of the trauma, including avoiding conversation about it, is common. Dr. Rosenblum explained that it is not surprising if a person waits until much later under different circumstances before being willing to talk about the trauma. Skinner's willingness to talk about the murder years later when he was in prison could be explained by a number of factors, including "just maturity and greater distance from the event, but also the extraordinary circumstances surrounding being contacted by an investigative reporter with the idea that potentially there was a mistake made in the prosecution of individuals that might compel him to do so." Accordingly, we conclude that MCR 6.508(D)(3) does not bar the newly discovered evidence claims regarding Skinner's account.

---

MCR 6.502(G)(2) makes no reference to a reasonable diligence requirement but instead refers to "a claim of new evidence that was not discovered before the" earlier motion. Hence, it appears that the inquiry required by the text of the rule is whether the new evidence was *actually* discovered before the earlier motion, not whether it *could* or *should* have been discovered at that earlier time. In any event, as discussed later, we conclude that Skinner's eyewitness description could not have been discovered with reasonable diligence before the earlier motions for relief from judgment.

Because the claims are not procedurally barred, we now turn to the substantive issue concerning newly discovered evidence. "We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of fact supporting its decision for clear error. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citations omitted). "The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made." *People v Rhodes*, 495 Mich 938; 843 NW2d 214 (2014). A trial court's decision regarding a motion for a new trial is reviewed for an abuse of discretion. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). Constitutional issues are reviewed de novo. *People v Vaughn*, 491 Mich 642, 650; 821 NW2d 288 (2012).

As our Supreme Court has explained:

For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks omitted).]

The satisfaction of the first two requirements is essentially undisputed. "[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *People v Rao*, 491 Mich 271, 281; 815 NW2d 105 (2012). Skinner was not interviewed by anyone in the aftermath of the murder, and his eyewitness account was not revealed to anyone until 2011 when he spoke to Lewis and to the MIC. There is no indication that defendants or their attorneys were aware at trial that Skinner had seen what occurred or could identify the shooter. Hence, Skinner's description of what occurred is newly discovered. And his testimony is not cumulative because it contradicts the evidence at trial; Skinner offered a description of the shooter that differed from the physical characteristics of defendants and definitively testified that neither defendant was the man he saw outside the van that night. Further, for the reasons discussed earlier, defendants and their attorneys could not, using reasonable diligence, have discovered and produced Skinner's eyewitness account at the time of trial.

The central issue, then, is whether the new evidence makes a different result probable on retrial. Skinner testified that the shooter was a black man in his mid-30s with short hair, a long and scruffy beard, and a prominent nose. The trial court noted that this description did not match the physical characteristics of defendants. When shown a photo array by the MIC that included photos of defendants, Skinner stated that the shooter was not depicted in the photos, and he reaffirmed this conclusion at the evidentiary hearing. Skinner also testified that he did not recognize Johnson and Scott in the courtroom. Skinner is positive that he would recognize the shooter if he saw the person; that person was not in the courtroom. Skinner testified that he would tell the truth to catch his mother's killer.

-5-

However, after reviewing all of the transcripts, including from the preliminary exam and both trials, the trial court found that Skinner's testimony was unreliable and therefore ruled that this precluded defendants from establishing that a different result was probable considering this new evidence. The court primarily relied on four factors to hold that Skinner was not credible: (1) Skinner was only eight years old at the time of the murder and his memory some 16 years later could not be certain; (2) it would have been incredibly difficult for Skinner to be inside a car at night and see someone outside the vehicle when the only illumination was from the vehicle's interior dome light, especially when considering that both Lisa and the car door were between him and the shooter; (3) Skinner had already been convicted for perjury; and (4) in any event, Skinner likely would have been asleep inside the car at the time of the murder.

The prosecution concedes on appeal that the trial court's theory that Skinner was actually asleep at the time of the murder is clearly erroneous, because it is speculative and unsupported by the record. However, setting aside this factor, we are not left with a definite and firm conviction that the trial court's ultimate finding was wrong, because the other factors used by the trial court support his credibility ruling.

The fact that Skinner testified about an event that occurred 16 years earlier is of strong importance. Common sense dictates that memories can fade and events that occurred such a long time ago would no longer be fresh in the witness's mind. We are aware that Dr. Rosenblum testified that a person may remember particular details from a moment of high traumatic stress and that such memories may be less susceptible to modification over time, but the trial court was not required to accept this opinion. Moreover, Dr. Rosenblum acknowledged that it was also possible that Lewis could have "planted a seed" in Skinner's mind that the wrong people were convicted, and she agreed that exaggeration is possible with the passage of time. Therefore, the trial court's concerns about the lengthy passage of time from the murder to Skinner's testimony are well founded.

Further, there is no dispute that it was night when the shooting occurred and that the only illumination was from the vehicle dome light. The trial court correctly was skeptical that an interior dome light would enable one sitting inside the vehicle to see outside the vehicle with any meaningful clarity. Skinner did not testify that the shooter leaned inside the car or was ever located near the door opening while the door was open, such that he would have been more likely to have been illuminated by the interior light. Instead, Skinner testified that he saw the shooter when Lisa opened the car door upon her return to the vehicle. The man was "directly behind" Lisa "but a little off to the side" of her. Skinner also stated that the man was "outside the door." Importantly, when Skinner heard the gunshot, the door window shattered, and Lisa managed to fully get into the car, close the door, and speed away before eventually dying at the nearby gas station. Thus, with the shooter having to shoot through the door window, it is certain that he was positioned on the other side of the door and not near the door opening, where the light would have been better.[5] In addition to the lack of illumination in the area, the court noted

---

[5] This is further supported by Skinner's drawing of the situation, where he placed the car door between the shooter and Lisa.

how any view of the shooter from the passenger seat would have been obstructed. Not only was Lisa positioned between Skinner and the shooter, but the car door was as well. With these facts, the court reasonably found that Skinner's testimony could not reasonably be afforded much weight.

Finally, the court aptly noted that Skinner was currently serving a prison sentence for perjury. The court found this fact very troubling and explained, "Should we believe him, seeing as how he was in prison for perjury? I mean good grief. Doesn't that go right to the essence of it?" While Skinner offered that he only lied before because he was protecting his best friend who was charged with murder, the fact that he had no qualms about violating his oath to tell the truth regarding something as serious as a murder rightfully caused the trial court here to be concerned. See MRE 609.

In sum, we are not left with a definite and firm conviction that the trial court erred when it made its determination regarding the credibility of Skinner. Matters of credibility are for the trial court to determine, and we give regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C); see also *People v Tyner*, 497 Mich 1001 (2015) (reversing Court of Appeals when it substituted the trial court's opinion for its own opinion of the credibility and veracity of the witnesses when the credibility of these newly discovered witnesses was the key factor in deciding whether to grant a new trial).[6] Although we reject the court's speculation regarding Skinner being asleep at the time of the shooting, there is substantial support for the court's credibility holding. Likewise, the court's finding that it was not probable that this evidence would have resulted in a different outcome on retrial, see *Cress*, 468 Mich at 692, was not clearly erroneous, and consequently, the court did not abuse its discretion when it denied defendants' motions for relief from judgment.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court further ordered us to consider "whether trial counsel rendered constitutionally ineffective assistance by failing to call Charmous Skinner, Jr., as a witness at trial" and "whether appellate counsel rendered constitutionally ineffective assistance by failing to raise [the issue of whether trial counsel was ineffective for failing to call Skinner as a witness and the issue of whether defendant is entitled to a new trial on grounds of the newly discovered evidence in for form of Skinner's testimony] on direct appeal."

---

[6] The *Tyner* Court also cited favorably the concurring opinion in *Alder v Flint City Coach Lines, Inc*, 364 Mich 29, 38; 110 NW2d 606 (1961) (CARR, J., concurring):

> This Court has repeatedly held that a trial judge, in passing on a motion for a new trial, is vested with a large discretion. The wisdom of such rule is obvious. The judge has the advantage of seeing the witnesses on the stand, of listening to their testimony, of noting the attitude of the jury to various matters that may arise during the trial, and is in far better position than is an appellate court to pass on questions of possible prejudice, sympathy, and matters generally that occur in the course of a trial but which do not appear of record.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Findings of fact are reviewed for clear error, but the ultimate constitutional issue for an ineffective assistance claim is reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich App at 411. This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's performance with the benefit of hindsight. *Id*. "[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008). Therefore, a defendant asserting a claim of ineffective assistance of appellate counsel "must show that his appellate counsel's decision not to raise a claim of ineffective assistance of trial counsel fell below an objective standard of reasonableness and prejudiced his appeal." *Id*.

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks omitted). A defense is substantial if it might have made a difference in the outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *Russell*, 297 Mich App at 716. A defendant claiming ineffective assistance has the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendants contend that if their claims of newly discovered evidence fail because the new evidence could have been discovered with reasonable diligence, then they are entitled to a new trial on the basis of ineffective assistance of trial and appellate counsel for failure to investigate and present Skinner's eyewitness account. See *Trakhtenberg*, 493 Mich at 55 n 10 ("[T]o the extent that defendant cannot show that he was entitled a new trial in light of newly discovered evidence under [*Cress*], because he or defense counsel could, 'using reasonable diligence, have discovered and produced the evidence at trial,' defense counsel was further ineffective for not having employed such reasonable diligence."). But as discussed earlier, we conclude that Skinner's eyewitness account could not have been discovered with reasonable diligence because Skinner, who moved to Pennsylvania shortly after the murder, refused to talk to anyone, including a therapist or counselor, about the murder, and it is entirely speculative to

suggest on this record that Skinner would have talked to a lawyer about the murder. Johnson's trial attorney explained at the evidentiary hearing that there was no indication in the police reports that any of the children in the van had seen the shooter. Overall, the record supports the conclusion that defendants' trial attorneys were not ineffective for failing to discover and produce Skinner's eyewitness account. Consequently, defendants' appellate attorneys also were not ineffective for failing to raise the issue of trial counsel's ineffective assistance based on trial counsels' failure to discover and produce Skinner. See *People v Reed*, 449 Mich 375, 402; 535 NW2d 496 (1995) (stating that appellate counsel is not ineffective by failing to raise meritless claims).

## III. SUPREME COURT ISSUE FOR DEFENDANT JOHNSON

For defendant Johnson, the Supreme Court also ordered us to review a fourth issue: if Johnson is not entitled to relief because of a procedural bar in the court rules *but Scott is entitled to relief*, whether the denial in that circumstance violates Johnson's constitutional rights to due process. *Johnson*, 497 Mich at 897 (2014). But because we have determined that neither Johnson nor Scott is entitled to relief, and because the denial of relief was not based on any court rule procedural bar, this issue is moot.

## IV. OTHER ISSUES RAISED BY DEFENDANTS

Defendants also raise other issues that were not part of the Supreme Court's remand order. "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Russell*, 297 Mich App at 714. We review whether a trial court exceeded the scope of a remand order de novo. See, generally, *People v Hawthorne*, 474 Mich 174, 179; 713 NW2d 724 (2006).

Because these other issues are beyond the scope of the Supreme Court's remand, they are not properly before us. Our order to remand referenced the Supreme Court's order, which stated that the purpose for the evidentiary hearing was two-fold: (1) whether defendants were deprived of the right to the effective assistance of counsel and (2) whether defendants were entitled to a new trial based on newly discovered evidence. Any question regarding the scope of these issues is answered in that same order, where the Supreme Court dictates that this Court is to decide after the evidentiary hearing "(1) whether trial counsel rendered constitutionally ineffective assistance *by failing to call Charmous Skinner, Jr., as a witness at trial*" and "(2) whether the defendant is entitled to a new trial on grounds of newly discovered evidence *in light of the proposed evidence related to Charmous Skinner, Jr., as an eyewitness to the homicide*." *Johnson*, 497 Mich at 897; *Scott*, 497 Mich at 897-898 (emphasis added). Thus, to suggest that the Supreme Court left open the possibility that defendants could raise other bases for a new trial are unfounded. It is well established that "'[t]he expression of one thing is the exclusion of another.'" *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74 n 8; 711 NW2d 340 (2006), quoting *Black's Law Dictionary* (7th ed); see also *People v Garrison*, 495 Mich 362, 372; 852 NW2d 45 (2014). Such a rule of construction is "a product of logic and common sense." *Hoerstman Gen Contracting*, 474 Mich at 74.

Accordingly, the trial court erred when it allowed defendants to inject other extraneous issues into the proceedings, such as the domestic violence records of Lisa's husband, William

Kindred.[7] The trial court compounded its error when it then offered its opinion that "it's quite conceivable," based on William's history of domestic violence, "that he may have planned or contracted to have this killing take place." Defendants assert that because the trial court's theory of how the murder transpired (a premeditated shooting) directly contradicts the theory upon which defendants were convicted (felony murder, where the underlying felony was the attempted robbery of Lisa), that a new trial must be granted. However, the trial court was only asked to determine whether the discovery of Skinner's testimony afforded defendants a new trial, and the court emphatically answered that question in the negative. Accordingly, we consider the trial court's unsolicited thoughts on the particular theory of the murder, when that was not pertinent to whether a new trial was needed based on Skinner's testimony, as akin to dictum. See, e.g., *People v Tierney*, 266 Mich App 687, 713; 703 NW2d 204 (2005) (defining orbiter dicta as "[s]tatements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case at hand . . . ."). In short, the trial court was asked to evaluate the efficacy of defendants' claim for a new trial based on Skinner's testimony, and the trial court clearly stated that this testimony was not enough to warrant a new trial. That finding was not clearly erroneous, and we must affirm.

Defendants also suggest that the recantations by two key prosecution witnesses, Antonio Burnette and Raymond Jackson, both of whom testified at trial that defendants made inculpatory statements, offer additional reasons for concluding that a different result is probable on retrial. However, as already noted, this was not a ground that the Supreme Court considered when it remanded to us. Accordingly, this issue also is not properly before us.[8]

Affirmed.

/s/ Henry William Saad
/s/ Colleen A. O'Brien

---

[7] We also note that the evidence introduced was in the form of police records, which by their very nature are inadmissible as hearsay because they are adversarial investigatory reports prepared in anticipation of litigation. See *People v McDaniel*, 469 Mich 409, 413-414; 670 NW2d 659 (2003); *People v Stacy*, 193 Mich App 19, 33; 484 NW2d 675 (1992).

[8] In any event, the trial court correctly found that the recantations seriously lacked any substantive weight. "[W]here newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). No form of proof is as unreliable as recanting testimony, given its untrustworthy character. *Id.* at 559-560, citing *People v Van Den Dreissche*, 233 Mich 38, 46; 206 NW 339 (1925). "Michigan courts have expressed reluctance to grant new trials on the basis of recanting testimony." *Canter*, 197 Mich App at 560. Accordingly, the trial court did not clearly err when it found that the recantation evidence would not have made a different result upon retrial probable.